## STATE v. CARL ALBERT POLSON.

145 N. W. (2d) 308.

September 23, 1966—No. 39,762.

*Richard D. Allen,* for appellant.

*Robert W. Mattson,* Attorney General, *George M. Scott,* County Attorney, and *William S. Posten,* Assistant County Attorney, for respondent.

THOMAS GALLAGHER, JUSTICE.

On September 11, 1964, Carl Albert Polson was convicted by a jury for the crime of theft under Minn. St. 609.52, subd. 2(1).[1] The complaint dated August 7, 1964, set forth that —

"* * * on or about the 14th day of July * * * 1964, within the corporate limits of the City of Minneapolis, Hennepin County, Minnesota, Carl Polson * * * did wilfully, unlawfully, wrongfully, knowingly, feloniously and intentionally, without claim of right, take, steal and carry away from the person and possession of Iver Wick, without the consent of the said Iver Wick, the sum of Twenty-one Dollars ($21.00), genuine, lawful and current money of the United States of America, of the value of Twenty-one Dollars ($21.00), a more particular description of said money being to the complainant unknown, said money being then and there the property of and in the lawful possession of Iver Wick, with intent then and there had and entertained by him, the said Carl Polson, to permanently deprive the said Iver Wick, the true owner of said property, of his said property, and to appropriate the same to the use of him, the said Carl Polson * * *."

---

[1] Minn. St. 609.52, subd. 2, provides in part: "Whoever does any of the following commits theft * * *:

"(1) Intentionally and without claim of right takes, uses, transfers, conceals or retains possession of movable property of another without his consent and with intent to deprive the owner permanently of possession of the property * * *."

At trial in which he was represented by Paul W. Lohmann, court-appointed counsel, defendant denied that he had committed the crime and sought to prove his presence elsewhere. Accordingly, the principal issue involved was that of his identification as the person accused in the complaint. On this issue the evidence was as follows: Mr. Iver Wick, victim of the theft, who because of his crippled condition walked with a cane, testified that on July 14, 1964, at about 4:10 p. m., he had been attacked and robbed by two men, one of whom was defendant; that the other man had then taken his billfold containing $21 from his hip pocket while defendant had taken his small change from another pocket; that the crime had taken place in front of the Commercial Hotel on Nicollet Island in Minneapolis; and that at first he had made no report to the police because he feared that the men who had robbed him and who were frequently seen in the neighborhood might injure him after completing any sentence which might be imposed on them for the crime. He identified defendant and one Victor Bosnich as the attackers. Mr. Willy Eibrink and Mr. Harold Pierce Law, who had witnessed the crime, also appeared as witnesses for the state and both testified that defendant was one of the two men who had participated in the attack and robbery.

Mr. Welton Kopp, a Minneapolis police officer, testified that on July 14, 1964, at about 7 p. m., he had been informed by Mr. Law that a robbery had been committed; that at that time Mr. Law had pointed out defendant and Bosnich then walking down the street as the perpetrators; that he then endeavored to locate Mr. Wick to verify Mr. Law's statement; that on July 16 he located Mr. Wick at the Grove Apartments and after interviewing Mr. Wick and ascertaining that he could identify the men involved, he and his fellow officer went to headquarters to make a report; that on the way down they observed Bosnich in front of the Great Northern Depot and at that time took him into custody. On direct examination he was asked: "Did you subsequently take the * * * defendant here into custody?" and replied: "At the time we apprehended Mr. Bosnich, Mr. Polson was either in City Jail or the Workhouse, I don't know which, and at this time I understand a hold had been placed." The court then stated: "Here, let's not go into anything of that nature.

Ask your next question." The witness then testified that defendant had been arrested August 6, 1964, at approximately 12:30 p. m. in front of the Denver Hotel. He was then asked:

"Q Did you have any conversation with the defendant at the time relative to why you were arresting him?

"A We informed him what he was under arrest for and he denied that he committed the crime and stated that we would have to prove that he did this."

He testified further that after this conversation defendant had been taken to the robbery office at Minneapolis police headquarters where he was questioned by detectives. Officer Kopp was asked:

"Q Did you hear the defendant say anything at that time?

"A One of the detectives asked him about this incident, whether he had done it. He said, 'I don't do anything heavy. I'm just a booster'."

Detective Donald Noard, who had questioned defendant at the robbery office, testified for the state as follows:

"Q Will you relate that conversation, please, what you said to the defendant and what he said to you?

"A This man was brought in by these two uniform officers. He was a suspect in this robbery case * * *. I told him I thought maybe he could straighten this thing out for me, and he said, 'I'm not involved in any robbery. I'm a booster.' I said to him, 'Well, I haven't said anything to you about any robbery as yet,' and he repeated, 'I'm just a booster. I don't go in for anything heavy.' He said, 'You must want to talk to me about a robbery or I wouldn't be in the robbery office.'

"Q Did you have any further conversation with him at that time?

"A I asked if he knew Victor Bosnich and he told me no. He said, 'I might have saw him. I don't know him,' and as far as I recall there was no other conversation. I said, 'The only thing I can do, you are pretty well under the influence of liquor,' I told him, 'the only thing I can do is to put you upstairs and let our witnesses look at you tomorrow morning,' * * *."

Defendant's counsel called as an alibi witness Mr. Charles Meeds who

sought to establish that defendant was elsewhere at the time of the alleged crime. On direct examination by defendant's counsel, he testified:

"* * * a friend of mine come out of the Workhouse * * * on a Friday, the 17th, and he told me that Joe [Polson was also known as Mexican Joe] here come out to the Workhouse, and I said, 'Well, that seems strange. He was here Tuesday to see me and got $3.00,' and I said, 'that's funny.' He said, 'Yes. He only got ten days for being drunk,' or something."

On cross-examination by state's counsel, Meeds testified as follows:

"* * * I spent four days * * * at the Workhouse and I heard he [defendant] was out there and had a fight with Victor Bosnich but I didn't get to see him.

"Q Did you see him at all while you were at the Workhouse?
"A No, sir.

* * * * *

"Q Have you two ever worked together?
"A No, unless it was a spot job."

Victor Bosnich, who was also called as a witness by defendant, in the course of his testimony was asked:

"Q Do you recall at the prior trial when the officer testified that he removed you and Mr. Polson from some place over on Nicollet Island that very same evening?
"A I remember the officer lying, yes."

The jury returned a verdict of guilty and defendant was sentenced to the custody of the commissioner of corrections at Stillwater for a term not to exceed 5 years. Subsequent to this verdict but prior to the imposition of sentence, defendant filed a "Petition for New Trial" and served a copy of it upon the county attorney of Hennepin County. Therein he set forth 4 grounds for a new trial as follows:

"1. That said Defendant had asked counsel, Mr. Paul W. Lohmann to exempt the jury foreman, counsel had denied request.

"2. That said Defendant was not informed of right to segregation of witnesses.

"3. That states witnesses, and defense witnesses were allowed to hear each others testimony during the trial.

"4. That said witnesses and jury members during recesses on September 10, 1964 morning and afternoon, were allowed to congregate in court corridor."

With respect to this petition the following proceedings took place at the time defendant appeared for sentencing:

"Q [By the court] * * * You are here because of the fact a jury brought in a verdict of guilty on a charge of theft. Is there anything that you wish to say with respect to that matter, or any other matter, before I pronounce sentence in this matter?

"A Like I say, I am innocent of this charge, Your Honor.

"Q There has been written by you and directed to the Clerk of the District Court a two page letter entitled 'Petition for new trial'. That was signed by you before Paul W. Lohmann, Notary Public. Is that right?

"A Yes, Your Honor.

* * * * *

"MR. LOHMANN: Your Honor, I appear on that motion as the notary public, and the defendant requested a notary and I said I would do the same for him * * *. I do not appear as counsel in behalf of the defendant for the purpose of the motion, the motion having been made by the defendant without consulting with myself or my office. I do not at this time expect the Public Defender's office to make a motion for a new trial.

"Q Very well. I shall direct that this petition in any event be filed in the file. Anything further that you have in mind, Mr. Polson, or anything you would like to say?

"A I guess that's about all I can say, Your Honor, that I am innocent of the charge."

The court then proceeded to impose the sentence as above described.

On appeal it is defendant's contention that (1) the testimony of the police officers in effect sought to establish that defendant was not of good character and was improperly received because defendant at no time had placed his character in issue; (2) that defendant was denied due

process in that his motion for a new trial had not been acted upon by the district court; and (3) that defendant was denied due process because the court had failed to appoint legal counsel to present his motion for a new trial.

■ We are of the opinion that the evidence outlined was properly received and that it is convincing as to defendant's guilt. While the testimony of Police Officers Kopp and Noard to the effect that defendant had been in jail at the time his associate Bosnich was apprehended and that subsequently he had stated that "I don't do anything heavy. I'm just a booster" may have been improper, we have held that similar statements made during cross-examination of an accused do not place his character in issue. State v. Stockton, 181 Minn. 566, 569, 233 N. W. 307, 308. Here where there was nothing in the statements attributed to defendant which could be regarded as an admission of guilt with respect to the crime for which he was being tried, and where the challenged testimony was received without objection and no motion was made to strike it, or to instruct the jury to disregard it, it would seem that its admission did not constitute error of such a serious nature as to justify a new trial.

■ It appears that while defendant's motion for a new trial was timely made, the court did not make any order for its disposition. It proceeded to sentence defendant as though it had not been filed, and it was then clear that defendant was without counsel to represent him. Under the circumstances, we deem it proper that the case be remanded so that the court may appoint counsel to represent defendant on the motion, and after a hearing thereon make such order as it deems proper. In the meantime, there is no reason for releasing defendant from custody pending determination of his motion.

Remanded for further proceedings in accordance with this opinion.